UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE GERVIN,

                Plaintiff,

    v.

RALPH LAUREN CORPORATION,

                Defendant.

Case No. 1:23-cv-1284-GHW-SDA

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT

KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
(212) 808-7800
*Attorneys for Defendant Ralph Lauren Corporation*

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| STATEMENT OF FACTS | | 2 |
| ARGUMENT | | 4 |
| I. | PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF A RIGHT OF PUBLICITY UNDER NEW YORK LAW BECAUSE HE HAS NEVER BEEN DOMICILED IN NEW YORK | 4 |
| II. | PLAINTIFF FAILS TO STATE A CLAIM FOR COMMON LAW TRADEMARK INFRINGEMENT BECAUSE HE HAS NOT PROPERLY PLED THAT HE OWNS VALID AND PROTECTABLE TRADEMARK RIGHTS IN THE MARK GERVIN | 6 |
| | A. No Allegations of Actual or Continuous Trademark Use of "GERVIN" | 6 |
| | B. No Plausible Allegations that "GERVIN" Has Acquired Secondary Meaning | 9 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abraham Zion Corp. v. Lebow*,
   761 F.2d 93 (2d Cir. 1985) .................................................................................................. 9

*Amped & Collection Inc. v. Hinton*,
   2018 WL 5283912 (S.D.N.Y. Sep. 10, 2018) ...................................................................... 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 4

*Buti v. Impressa Perosa, S.R.L.*,
   935 F. Supp. 458 (S.D.N.Y. 1996) ...................................................................................... 7

*Centaur Commc'ns Ltd. v. A/S/M Commc'ns, Inc.*,
   830 F.2d 1217 (2d Cir. 1987) ............................................................................................ 11

*Champagne v. Di Blasi*,
   134 F. Supp. 2d 310 (E.D.N.Y. 2001) ................................................................................ 6

*Champion v. Moda Operandi, Inc.*,
   561 F. Supp. 3d 419, 443-45 (S.D.N.Y. 2021) .................................................................... 5

*ESPN, Inc. v. Quicksilver, Inc.*,
   586 F. Supp. 2d 219 (S.D.N.Y. 2008) ................................................................................ 6

*Est. of Smith v. Cash Money Recs., Inc.*,
   2018 WL 2224993 (S.D.N.Y. May 15, 2018) .................................................................... 5

*In re Evolus Inc. Sec. Litig.*,
   2021 WL 4251957 (S.D.N.Y. Sep. 17, 2021) ...................................................................... 8

*In re Gordos Restaurant Corp.*,
   643 B.R. 1 (Bankr. S.D.N.Y. 2022) .................................................................................. 10

*Kim v. Francis*,
   184 A.D.3d 413 (1st Dep't 2020) ........................................................................................ 7

*Major League Baseball Properties, Inc. v. Opening Day Prods., Inc.*,
   385 F. Supp. 2d 256 (S.D.N.Y. 2005) ................................................................................ 7

*MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*,
  2022 WL 684756 (S.D.N.Y. Mar. 8, 2022) ...................................................................11

*Monbo v. Nathan*,
  2022 WL 4591905 (E.D.N.Y. Aug. 26, 2022) ..................................................................5

*Pirone v. MacMillan, Inc.*,
  894 F.2d 579 (2d Cir. 1990) ............................................................................................10

*Southeast Bank, N.A. v. Lawrence*,
  489 N.E.2d 744 (N.Y. 1985) .............................................................................................5

*Talk To Me Prod., Inc. v. Larami Corp.*,
  804 F. Supp. 555 (S.D.N.Y. 1992), *aff'd*, 992 F.2d 469 (2d Cir. 1993) ...............................6, 7

*The Cousteau Society, Inc. v. Cousteau*,
  498 F. Supp. 3d 287 (D. Conn. 2020) ................................................................................5

*Ushodaya Enterprises, Ltd. v. V.R.S. Int'l, Inc.*,
  63 F. Supp. 2d 329 (S.D.N.Y. 1999) ..................................................................................9

*Zoll v. Jordache Enterprises, Inc.*,
  2001 WL 1550943 (S.D.N.Y. Dec. 5, 2001) .......................................................................5

**Statutes**

Lanham Act, 15 U.S.C. § 1125(a) ...........................................................................................2

N.Y. Civil Rights Laws § 50 ........................................................................................1, 2, 4, 5

N.Y. Civil Rights Laws § 51 ...........................................................................................1, 2, 4

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................1

*George Gervin Partners with IPrivata and the HBAR Foundation to Launch the I OWN ME Campaign to Protect Athletes' Data and Digital Rights*, GLOBENEWSWIRE (Sep. 22, 2022) ..........................................................................................................................8

Defendant Ralph Lauren Corporation ("Defendant" or "RLC"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its partial motion to dismiss Plaintiff George Gervin's ("Plaintiff") Complaint (ECF No. 1) (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

It is well-established that domicile in New York is a pre-requisite to maintain a claim for a violation of the right of publicity pursuant to N.Y. Civil Rights Laws §§ 50, 51. The Complaint fails to state a claim for violation of Plaintiff's rights of publicity under the statute because it does not allege that Plaintiff is (or has ever been) domiciled in New York. Therefore, Count I of the Complaint should be dismissed.

Count III of the Complaint for "Common Law Trademark Infringement" alleges that "the public has come to recognize the GERVIN mark *as exclusively identifying Mr. Gervin*." (Compl. ¶ 84 (emphasis added)). Even if true, this is not adequate to state a claim for common law trademark infringement. A common law trademark claim requires allegations that the mark GERVIN has been previously and continuously exploited by Plaintiff *not* to identify Plaintiff himself, *but rather to identify the source of particular goods or services*.

The Complaint fails to sufficiently assert facts that, if true, would plausibly establish the requisite factual allegations that: (1) Plaintiff has made continuous use of the mark GERVIN *to identify the source of any goods or services* in any particular geographic region prior to Defendant's alleged infringement and (2) GERVIN has acquired secondary meaning as a trademark because the public has come to associate the surname GERVIN *primarily as the source of any particular goods and services* prior to any alleged infringement. Therefore, Count III of the Complaint should be dismissed.

1

## STATEMENT OF FACTS

Since the 1960s, Defendant has been a premiere lifestyle brand, both in the United States and globally. RLC is exclusively associated with a number of well-known trademarks, including, among others, its registered POLO and Polo Pony marks (the "POLO Marks"). As a result of the extensive use and promotion of goods and services offered for sale in the United States and around the world in connection with RLC's POLO Marks, and the high quality of such goods and services, consumers in the U.S. and worldwide associate goods bearing the POLO Marks exclusively with the Ralph Lauren brand.

Among the many thousands of POLO-branded products that have been offered for sale by RLC were shoes that were identified with the style name "Gervin-mid." These shoes all predominantly bore the registered POLO trademark on the product and packaging, and emphasized the POLO trademark at point of sale on ecommerce websites.

Contrary to the allegations in the Complaint, the style name "Gervin-mid" was not chosen in an attempt to exploit Plaintiff's name or identity, or to otherwise imply that Plaintiff endorsed the POLO branded shoes. In fact, other brands have also used the name Gervin as part of a style name for a shoe, such as Adrienne Vittadini and Skechers. RLC did not utilize any image or likeness of Plaintiff in connection with its promotion or sale of the shoes, and the shoes were not the subject of any media or promotional campaign by RLC. RLC never received any reports that consumers believed that its shoes were associated with, sponsored by, or endorsed by Plaintiff. Nevertheless, upon learning of Plaintiff's concerns, RLC promptly ceased use of the style name.

Plaintiff alleges violations of his right of publicity under N.Y. Civil Rights Laws §§ 50, 51 ("Count I"); False Endorsement under the Lanham Act, 15 U.S.C. § 1125(a) ("Count II"); and New York's common law trademark infringement ("Count III") in connection with RLC's use of the style name "Gervin-mid" for POLO branded shoes.

The Complaint alleges that Plaintiff resides in San Antonio, Texas. (Compl. ¶ 20) The Complaint does not allege that Plaintiff has ever resided in the State of New York. According to the Complaint, Plaintiff's successful basketball career in the 1970s and 1980s has made him an "internationally recognized sportsman," and he is known as "The Iceman." (Compl. ¶¶ 20, 22–25.) The Complaint also alleges that Nike entered into a "strategic partnership" with Plaintiff in the 1970s to promote NIKE branded high top sneakers sold under the style name "The Blazer." (Compl. ¶¶ 49–50.) To market its Blazer style shoe, Nike provided Plaintiff with a personalized version of the shoe that included Plaintiff's nickname—"ICEMAN"—rather than the NIKE brand name across the back of the shoe. Plaintiff wore this personalized version of the shoe when he competed in NBA games. (Compl. ¶¶ 49–51.) The Complaint does not allege that shoes bearing the name "ICEMAN" were ever sold to the public by Nike, but it does allege that versions of the Nike Blazer shoe worn by Plaintiff in NBA games were subsequently sold on the secondary memorabilia market. (Compl. ¶¶ 51–53.)

The Complaint further alleges that Plaintiff remains active in the sport of basketball via coaching, and supports youth-focused non-profit causes in the community of San Antonio, Texas and Phoenix, Arizona, such as the George Gervin Youth Center and a charter school called the George Gervin Preparatory Academy. (Compl. ¶¶ 6, 29.) Plaintiff also alleges that he has "sought to use his fame and name recognition to advocate for a new generation of athletes" and has "recently partnered" with a HBAR Foundation and digital identify protection company IPrivata (for whom he is a "brand ambassador") to launch a campaign called "I Own Me" to raise awareness and educate young athletes about protection of their image and likeness in the digital landscape. (Compl. ¶¶ 10, 31, 34.)

The Complaint further states that Plaintiff "owns a valid common law trademark[]" and that "[t]he public has come to recognize the GERVIN mark *as exclusively identifying Mr. Gervin*, and the mark is famous worldwide." (Compl. ¶¶ 83, 84 (emphasis added).) The Complaint does not allege: (i) the date when Nike ceased to market the Nike Blazer style shoes in partnership with Plaintiff; (ii) that Plaintiff has ever used or licensed use of the mark GERVIN as a brand name to identify the source of any sneakers or other products in any geographic location; or (iii) that Plaintiff has made any commercial endorsements of any products since the strategic partnership with Nike in the 1970s. (*See* Compl. ¶¶ 28–34.)

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and it requires a "'showing,' rather than a blanket assertion, of entitlement to relief," supported by sufficient "factual allegation[s]." *Twombly*, 550 U.S. at 556 n.3. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Plaintiff fails to meet this standard with respect to his claims under New York's Right of Publicity laws (N.Y. Civil Rights Laws §§ 50, 51) and common law trademark infringement.

### I. PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF A RIGHT OF PUBLICITY UNDER NEW YORK LAW BECAUSE HE HAS NEVER BEEN DOMICILED IN NEW YORK

Plaintiff alleges violations under New York's right of publicity law, as codified in N.Y. Civ. Rights. L. §§ 50, 51. (See Compl. ¶¶ 64-71.) New York law requires that a plaintiff is

domiciled in New York in order to sustain a private cause of action under New York's right of publicity laws. "The New York Court of Appeals has made clear that New York Courts must apply the law of the Plaintiff's domicile to right of publicity claims" and thus "a plaintiff domiciled outside of New York cannot maintain a claim for damages under Section 51." *Champion v. Moda Operandi*, Inc., 561 F. Supp. 3d 419, 443–45 (S.D.N.Y. 2021). This is a long recognized application of New York choice of law.[1] *See Southeast Bank, N.A. v. Lawrence*, 489 N.E.2d 744, 745 (N.Y. 1985) (holding that New York's right of publicity law looks to the plaintiff's domicile); *Zoll v. Jordache Enters., Inc.*, 2001 WL 1550943, at *2 (S.D.N.Y. Dec. 5, 2001) ("right of publicity claims are governed by . . . plaintiff's domicile"); *Est. of Smith v. Cash Money Recs., Inc.*, 2018 WL 2224993, at *3 (S.D.N.Y. May 15, 2018) (collecting cases); *Monbo v. Nathan*, , 2022 WL 4591905, at *26 n.19 (E.D.N.Y. Aug. 26, 2022) (citing *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989)) ("New York courts apply the law of the plaintiff's domicile in evaluating right of publicity claims.").

Admittedly, Plaintiff is not a New York resident. (Compl. ¶ 20.) The Complaint does not allege he was ever domiciled in the State of New York. Therefore, Plaintiff cannot maintain a right of publicity claim under New York law and Count I of the Complaint should be dismissed.

---

[1] New York courts have applied a different standard with respect to claims that defendant has committed the tort of violating a right to *privacy* that is also codified by NY Civ Rights Law §50, but is a wholly distinct cause of action. *See Zoll*, 2001 WL 1550943, at *2 (The right of publicity is, *per se*, bound to the law of the plaintiff's domicile, whereas "[i]n contrast, New York's choice of law rules for torts apply to the right to privacy claim."). Plaintiff does *not* allege a violation of privacy claim in this case. The right of publicity protects against commercial loss whereas the right of privacy is centered on emotional distress caused by alleged unauthorized use. *See e.g.* McCarthy § 28:6. A right of privacy claim would also fail here because, *inter alia,* Plaintiff does not allege that New York has the most significant relationship to the harm—nor could he plausibly do so. The conduct and harm alleged here occurred in various states and on the internet (i.e., everywhere); thus New York does not have the most significant relationship to the claim. *See e.g., The Cousteau Society, Inc. v. Cousteau*, 498 F. Supp. 3d 287, 315 (D. Conn. 2020).

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR COMMON LAW TRADEMARK INFRINGEMENT BECAUSE HE HAS NOT PROPERLY PLED THAT HE OWNS VALID AND PROTECTABLE TRADEMARK RIGHTS IN THE MARK GERVIN

The Complaint does not allege that Plaintiff owns any trademark registrations for the mark GERVIN. Instead, it alleges "Common Law Trademark Infringement." (Compl. ¶¶ 82–90.) In order to properly plead a claim for infringement of common law trademark rights in the surname GERVIN, Plaintiff must state facts that plausibly allege both: (1) "actual and continuous" use of GERVIN in commerce to identify the source of products, and (2) that GERVIN is inherently descriptive or has acquired a "secondary meaning" such that consumers do not see it primarily as a surname, but rather to identify a business or source of products. *Talk To Me Prod., Inc. v. Larami Corp.*, 804 F. Supp. 555, 559 (S.D.N.Y. 1992), *aff'd*, 992 F.2d 469 (2d Cir. 1993).[2] *See also* McCarthy's § 13:2. The elements and analysis of trademark infringement "under New York common law mirror the Lanham Act [trademark] claims." *See ESPN, Inc. v. Quicksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008). The Complaint does not allege facts that, if true, would establish either element. Therefore, the Court should dismiss Count III of the Complaint.

### A. No Allegations of Actual or Continuous Trademark Use of "GERVIN"

In his claim for "Common Law Trademark Infringement," Plaintiff alleges that "the public has come to recognize the GERVIN mark *as exclusively identifying Mr. Gervin*." (Compl. ¶ 83 (emphasis added).)

Even if true, this is not sufficient to plead a claim for common law trademark rights in the name GERVIN. In order to properly plead a claim for infringement of common law trademark rights, Plaintiff must allege facts that, if true, plausibly demonstrate that prior to the alleged infringement by Defendant, he deliberately and continuously exploited the name GERVIN *not to*

---

[2] Pleading trademark infringement also requires facts sufficient to allege that defendant's use of the mark is likely to confuse consumers. *See e.g.*, *Champagne v. Di Blasi*, 134 F. Supp. 2d 310, 314 (E.D.N.Y. 2001).

*identify himself*, but to identify *the source of particular goods or services*. "Common law trademark rights develop when goods bearing the mark are placed in the market and followed by continuous commercial utilization." *Buti v. Impressa Perosa, S.R.L.*, 935 F. Supp. 458, 469 (S.D.N.Y. 1996) (internal quotations omitted); *see also Talk to Me*, 804 F. Supp. at 559 (a party must plead that it was "first [to use the mark] in connection with a particular line of business;" and that it has made "deliberate and continuous" use of the mark to promote or sell products or services in commerce, with "an intent[] to continue to exploit[] the mark commercially."). Use in commerce requires use of the mark "in a way sufficiently public *to* identify or distinguish *the marked goods* in an appropriate segment of the public mind as those of the adopter of the mark." *Amped & Collection Inc. v. Hinton*, 2018 WL 5283912, at *5 (S.D.N.Y. Sep. 10, 2018); *see also Major League Baseball Properties, Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 266 (S.D.N.Y. 2005) (party must use the mark in an "active and public attempt to establish a trade" selling a good or service). In other words, the name must be used *as a brand* for the goods or services.

The wholly conclusory statement that "Mr. Gervin owns a valid common law trademarks [sic] in GERVIN for use in connection with the promotion of products and services in the sportswear industry" is wholly unsupported by any facts alleged in the Complaint and is therefore not sufficient to properly plead a claim for common law trademark infringement. (Compl. ¶ 83.) The Complaint does not plausibly allege that Plaintiff has used (or licensed others to the use) the name GERVIN as a trademark to identify the source of any products. For this reason alone, Plaintiff's claim for common law trademark infringement should be dismissed. *See e.g.*, *Kim v. Francis*, 184 A.D.3d 413, 414 (1st Dep't 2020) (affirming dismissal of trademark infringement claim in part because "plaintiff failed to plead his actual use of the mark in commerce").

7

Allegations in the Complaint that the name GERVIN is associated with Plaintiff *himself* (Compl. ¶ 84), or his impressive professional basketball career (*see* Compl. ¶¶ 2, 3, 82, 84), do not amount to allegations that the name GERVIN has been used continuously to identify the source of goods or services offered for sale in commerce, as is necessary to plead a claim for common law trademark rights in the name. Nor do allegations that Plaintiff *himself* has recently served as a spokesperson or "ambassador" for third party services or campaigns[3] equate to a factual allegation that the name GERVIN was used to *identify the source* of those third party goods or services. (Compl. ¶¶ 10, 34.) Allegations that Plaintiff *himself* remains active in the sport of basketball via coaching or mentoring young players and in other philanthropic endeavors also is not sufficient to allege use of the name GERVIN as a source of any particular products or services necessary to state a cause of action for common law trademark rights in the name. (Compl. ¶¶ 6, 7, 8, 82, 84.) Similarly, allegations that Plaintiff "fiercely protects his name, image, likeness and persona" do not equate to use of the name GERVIN as a trademark to identify the source of any particular goods or services. (Compl. ¶ 9.)

Allegations in the Complaint regarding Plaintiff's partnership with Nike—50 years ago— to market a Nike shoe called "The Blazer," including his wearing personalized Nike shoes bearing the nickname "ICEMAN" in NBA games, are also not sufficient to sustain a claim of common law trademark ownership in the mark GERVIN. (Compl. ¶¶ 50–51.) The Complaint does not allege

---

[3] Notably, his partnership with IPrivata reportedly commenced *after* the date the Complaint alleges Defendant first sold the "Gervin-mid" shoes. (Compl. ¶ 57); *see George Gervin Partners with IPrivata and the HBAR Foundation to Launch the I OWN ME Campaign to Protect Athletes' Data and Digital Rights*, GLOBENEWSWIRE (Sep. 22, 2022), https://www.globenewswire.com/en/news-release/2022/09/22/2521041/0/en/George-Gervin-Partners-With-IPrivata-and-the-HBAR-Foundation-to-Launch-the-I-OWN-ME-Campaign-to-Protect-Athletes-Data-and-Digital-Rights.html. Thus, even if it were trademark use, it could not confer prior rights necessary to sustain a claim. The Court may take judicial notice of "press coverage [in] establishing what information existed in the public domain during periods relevant to the plaintiffs' claims." *See In re Evolus Inc. Sec. Litig.*, 2021 WL 4251957, at *4 n.6 (S.D.N.Y. Sep. 17, 2021) (internal quotations omitted).

any NIKE shoe or other product bearing the name GERVIN, or marketed under the mark GERVIN, was ever sold either in 1973 or anytime thereafter. Therefore, Plaintiff does not sufficiently allege trademark use at any time, or trademark use in the continuous manner necessary to allege common law trademark rights today, or in 2022–2023 when Defendant sold the allegedly infringing products.

The Complaint also does not sufficiently allege the geographic area in which Plaintiff alleges to own common law trademark rights. The acquisition of common law trademark rights (and the ability to enforce such rights) is tied to the "distinct geographic areas" where the mark was actually used in commerce. *See, e.g.*, *Ushodaya Enterprises, Ltd. v. V.R.S. Int'l, Inc.*, 63 F. Supp. 2d 329, 337 (S.D.N.Y. 1999); *see also* Unfair Competition Restat. 3d § 19 (a party may only establish "priority over a subsequent user in those geographic areas in which the prior user has used the designation"). There are no allegations in the Complaint that Plaintiff ever had actual or continuous use of the mark GERVIN in any geographic location, let alone New York or in any geographic area proximate thereto—which is required to establish and enforce a common law trademark in New York. *See, e.g.*, *Ushodaya Enterprises*, 63 F. Supp. 2d at 337.

Plaintiff has failed to adequately plead actual and continuous use of the mark GERVIN to identify the source of any particular goods or services in New York or any other particular geographic area. On this basis alone, Count III should be dismissed.

### B. No Plausible Allegations that "GERVIN" Has Acquired Secondary Meaning

Surnames, like the GERVIN mark alleged here, are generally not "inherently distinctive" under the law. Therefore, in order to establish trademark rights, a plaintiff must demonstrate that the name has acquired "secondary meaning," such that the consumers *primarily* associate the name *with a single source of goods or services. See Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 104 (2d Cir. 1985). "Secondary meaning" requires that "the public has come to recognize the personal

name as *a symbol that identifies and distinguishes the goods or services* of only one seller." McCarthy on Trademarks § 13:2. A mark "has developed a secondary meaning identifying [a] product . . . when the consuming public primarily associates the [mark] with a particular source." *In re Gordos Restaurant Corp.*, 643 B.R. 1, 26 (Bankr. S.D.N.Y. 2022) (internal citations omitted).

A surname cannot establish secondary meaning as a trademark solely due to fame or public recognition of the individual himself. "Marks acquire secondary meaning when 'the <u>name and</u> the <u>business</u> have become synonymous in the mind of the public, submerging the primary meaning of the term in favor of its meaning as a word <u>identifying that business</u>.'" *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir. 1990) (emphasis added).

To establish secondary meaning, Plaintiff must allege that the public primarily sees the mark GERVIN as the source of particular goods or services and *not* primarily as a surname. *See Pirone*, 894 F.2d at 583. There are no such allegations in the Complaint. In fact, the Complaint does not even allege that the mark GERVIN has acquired secondary meaning. Nor does it allege any facts that courts typically consider when analyzing secondary meaning, such as: (1) advertising and promotional expenses for products sold under the GERVIN mark, (2) consumer studies linking the mark GERVIN to the source of particular products; (3) significant sales of products offered for sale under the mark GERVIN; (4) long and exclusive use of the mark GERVIN in connection with the sale of products; or (5) unsolicited media coverage of the products bearing the mark GERVIN. *See e.g.*, *In re Gordos*, 643 B.R. at 26. While the Plaintiff is not required to *prove* secondary meaning at this stage, an absence of *any* mention of "secondary meaning," or any plausible factual allegations in the Complaint that would tend to establish secondary meaning, demonstrates that a claim for common law trademark infringement has not been sufficiently pled.

For example, in *MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, 2022 WL 684756, at *11 (S.D.N.Y. Mar. 8, 2022), this Court dismissed a claim for common law trademark infringement for failure to state a claim where the complaint: (a) included only "vague and conclusory" allegations of plaintiff's alleged rights in the mark MIDCAP; (b) conflated plaintiff's registered rights in the mark MIDCAP BUSINESS CREDIT with its alleged rights in the unregistered mark MIDCAP; and (c) failed to plausibly allege that the descriptive MIDCAP mark had acquired secondary meaning. *aff'd in part, vacated in part, remanded*, 2022 WL 17175400 at *1, 9–11 (2d Cir. Nov. 23, 2022) (partially vacated on other grounds).

Plaintiff alleges in Paragraph 84 of the Complaint that "[t]he public has come to recognize the GERVIN mark *as exclusively identifying Mr. Gervin*, and the mark is famous worldwide." (Compl. ¶ 84 (emphasis added).) This allegation that the public "exclusively" associates the mark GERVIN with *the man himself*, is antithetical to the requisite allegation that the name GERVIN has acquired secondary meaning as a trademark, such that consumers do *not* primarily see GERVIN as a surname, but rather primarily associate GERVIN with the source of particular source of goods or services. *See Centaur Commc'ns Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1221 (2d Cir. 1987) (the mark must identify both the goods and the source of the goods). Other allegations in the Complaint claiming that Plaintiff *himself* is well-known or famous are similarly deficient. (Compl. ¶¶ 2–5, 22–26, 30–31, 54, 84.)

The Complaint fails to adequately plead facts that plausibly allege Plaintiff has made actual and continuous use of GERVIN to identify the source of any goods and services, or that GERVIN has acquired secondary meaning as a trademark. Failing to plead either is sufficient dismiss Plaintiff's common law trademark claim. Therefore, Count III of the Complaint should be dismissed.

11

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss Count I and III of the Complaint should be granted in its entirety, along with such other and further relief as the Court deems just and proper.

Dated: New York, New York
       May 15, 2023

KELLEY DRYE & WARREN LLP

By: */s/ Andrea L. Calvaruso*
    Andrea L. Calvaruso
    Aaron J. Gold
    3 World Trade Center
    175 Greenwich Street
    New York, New York 10007
    Telephone: (212) 808-7800
    Facsimile: (212) 808-7897
    acalvaruso@kelleydrye.com
    agold@kelleydrye.com

    *Attorneys for Defendant Ralph Lauren Corporation*